HANSEN, Appellant, vs. CAMPBELL LAUNDRY COMPANY, Respondent.

*February 11—March 2, 1915.*

*Master and servant: Injury to stationary engineer: Safety of working place: Contributory negligence.*

For the purpose of remedying a slight leakage of steam by tightening certain nuts, an experienced engineer reached his hand into the steel case inclosing the moving parts of an automatic stoking device, without having entirely shut off the steam, and was injured by a movement of the machinery. In an action against his employer to recover for such injury, it appearing that he fully understood the necessity of shutting off the steam to enable him to do the work safely, that screw valves were provided for that purpose, that he was familiar therewith, and that there was ample light for him to see and operate them, but that, instead of doing so, he attempted to shut off the steam by means of a dial valve or regulator which was not intended for the use so made of it, a verdict for defendant was properly directed.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action to recover for a personal injury.

The plaintiff was an experienced engineer. He was in the employ of defendant, attending a pair of automatic underfeed stokers. The motive power was steam. It was applied upon the same principle as in any ordinary steam engine. In each stoking machine there was a combination of oscillating plunger, a cylinder, a piston head and connecting shaft, two ports, two corresponding exhausts, a steam chest, a connecting steam pipe, and appliances thereon to regulate or shut off the steam. One of such appliances was a valve with a lever connection which could be turned on the face of a graduated dial, designed, specially, to regulate the flow of steam according to the amount of fuel which conditions might require from time to time. By placing the dial point at zero the steam would be sufficiently shut off to stop, or practically stop, the feed, but there were other valves for use in closing off the

steam absolutely.    One valve was located above the dial valve
and one below it.    The moving parts of the apparatus were
inclosed in a steel case.    There were occasions when, for the
purpose of making repairs, it was necessary to remove a plate
and insert the hand into the case.    On such occasions, it was
necessary to shut off the steam.    On one of such occasions
the accident in question occurred.    There was a slight leak-
age of steam, rendering it necessary to tighten some nuts in-
side the case so the packing around the plunger shaft would
do its work.    Plaintiff swung the dial point to zero, prepared
the case to receive his hand, and, supposing the plunger and
moving parts were at rest, reached in inside the case and com-
menced turning up the nuts.    There was sufficient escape of
steam past the regulating valve to cause a movement of the
machinery, whereby plaintiff's hand was injured.    He fully
understood the necessity of closing off the steam in order to
enable him to do his work safely.    He had occasion, fre-
quently, to close off the steam by turning off the valves de-
signed therefor.    He did that, generally, when he wished to
put the machine out of use for a time.    In the boiler room
there were some six windows.    Four admitted light to the
room freely.    The dial valve was about six feet from a win-
dow and the window was four feet above it.    The valve was
directly opposite the window that admitted light without ma-
terial obstruction.    In the center of the room and about eight
feet from the control valve was a four-arc gas lamp, so
arranged that by pulling a regulating chain the full light
would be on.    Without the aid of the artificial light, on the
occasion in question, by fair effort to that end, the figures on
the dial plate could be readily seen.    Plaintiff did not use
the gas arc light though he knew it was in place therefor when
needed.    He testified that he abstained from using it to save
expense.    He could, by use of any one of the three screw valves,
have shut off the steam and did not need any more light than
was naturally afforded in such operation.    There was noth-

ing out of order with the appliance but the packing inside the case which appellant was engaged in tightening by setting up the nuts designed therefor. The negligence claimed was that his working place was not as safe as the statutory standard requires. The defense was grounded on the claim that such working place satisfied every requirement of the statute and plaintiff was guilty of contributory negligence.

At the close of the evidence the court directed a verdict in favor of the defendant, particularly on the ground of contributory negligence. Judgment was rendered accordingly.

For the appellant there was a brief by *Rubin, Fawcett & Dutcher,* and oral argument by *P. R. Newcomb.*

*Paul D. Durant,* for the respondent.

MARSHALL, J. The sole question in this case is, Was the verdict properly directed? The rules by which that must be decided are too well understood to require more than the suggestion that they and nothing else must control as to the result.

The trial court seems to have viewed the situation in all its reasonable aspects. The situation was characterized by full knowledge on plaintiff's part with what was required to be done in order to enable him to safely do the repair work, of everything being provided for his use to create the requisite condition of safety, of perfect familiarity therewith, and of his failure to create such condition, resulting in the injury.

The claim that there was insufficient light seems to have no merit since it is clear that, had plaintiff paid the attention to his safety which the situation reasonably demanded, he had ample light for him to discover the location of the dial plate and the indicating point. Furthermore, evidently his familiarity with the controlling valves enabled him to discover by mere touch whether the point was at zero or not. Still further, the dial valve was not intended for the use made of it on the particular occasion. For such use the screw valves were provided and plaintiff confessed there was ample light

for him to see and operate them. On the whole, we are unable to reach the conclusion that the court below was clearly wrong in directing the verdict.

*By the Court.*—The judgment is affirmed.